**Kathryn EISENHAUER, Exrx., Plaintiff-Appellant,**

v.

**Ronald F. BURGER and P. and P. Transport, Inc., Defendants-Appellees.**

**No. 20187.**

United States Court of Appeals, Sixth Circuit.

Sept. 18, 1970.

834

John C. Huffer, Toledo, Ohio, for plaintiff-appellant; Milward & Huffer, Toledo, Ohio, on brief.

Wilbur C. Jacobs, Toledo, Ohio, for defendants-appellees; Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, on brief.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

WEICK, Circuit Judge.

The action was originally brought in the Common Pleas Court of Lucas County, Ohio, to recover damages for personal injuries sustained by the decedent, Frank Eisenhauer, and for his wrongful death arising out of an accident occurring in the Toledo Terminal Yards of Norwalk Truck Lines, Inc. (Norwalk) when he was struck by a tractor owned by P and P Transport, Inc. (P and P) and driven by its employee Burger. Eisenhauer was an em-

ployee of Norwalk and was walking in its yards at the time.

The case was removed to the District Court because of diversity of citizenship. Ohio law governs the substantive issues of the case.

After a four-day trial on issues of negligence, contributory negligence and damage, the case was submitted to the jury which returned a verdict in favor of both defendants upon which judgment was entered. Plaintiff has appealed therefrom. We affirm.

Appellant has presented twelve (12) alleged errors not all of which require discussion. She contends that the court erred in limiting the scope of her counsel's interrogation of prospective jurors on voir dire examination "relative to stock ownership into insurance interests".

The record discloses the following questions were propounded by counsel for Plaintiff to prospective juror Alleman:

"Q. Do you have any stocks or other form of corporate ownership personally?

A. Yes.

Q. I don't want to pry in depth, if you have a portfolio or anything, but can you tell me whether this is purchased on a stock investment plan with your corporation?

A. Yes, with my corporation.

Q. Do you have any stock other than with your own corporation?

A. Yes.

Q. Do you know the nature of the companies that you have investments with?

A. Yes.

Q. What would they be?

A. Utilities, other than the company that I work for.

Q. Have you yourself, or anybody in your family, any close personal friends, had any employment in the area of claims investigating or claims adjustment?

A. No, sir.

Q. Have you yourself ever been in-involved in any investment counseling, investment of other people's funds?

A. No.

Q. Do you know of any reason at all that you couldn't sit in this case and be fair to both the Defendant and Plaintiff?

A. No, I don't.

THE COURT: Will counsel approach the bench, please?

(Counsel and Court conferred at the bench.)"

The record does not disclose what transpired at the bench conference. Plaintiff's counsel later propounded the following questions addressed to the entire panel:

"MR. HUFFER: And I might at this time, just to speed things up a little bit, ask the jury as a panel, because this is a question that I would have to ask all of you, whether or not there is anybody here who has anybody in their immediate families who have ever worked as a claims investigator or claims or [sic] adjuster? Is there anybody who has?

I might ask if there is anybody on the panel, other than Mr. Alleman, who has any corporate stock ownership of any corporation?

(Mr. Herman Bersticker, Jr. raised his hand.)

MR. JACOBS: Your Honor, I think this actually being almost to the point of prying. It seems to me if they have stock in P & P Transport, that could be asked without trying to disclose all of their stock holdings.

THE COURT: The Court will sustain, other than the general inquiry that is in the record as to whether or not they have any interest in this or any other transport company.

MR. HUFFER: That wasn't the thrust of our question.

THE COURT: Then approach the bench, please.

(Court and counsel conferred at the bench.)

MR. HUFFER: I will ask the jury panel as a whole also whether or not you have ever had anything to do with investment counseling—whether they have counseled anybody with reference to the investment of funds for future earnings?

Is there anybody who has ever been involved in anything of that nature?"

It will be noted that no question was asked as to stock ownership of the prospective jurors in Norwalk, in P and P or in any other transport company, nor was any question asked the jurors as to their ownership of stock in a casualty insurance company. The record does not support appellant's contention that the court refused to allow interrogation with respect to casualty insurance.

■ In Ohio, such questions with respect to stock ownership in transport companies would have been entirely proper. It would also have been proper to inquire as to stock ownership in a casualty insurance company provided that it was done in good faith. Dowd-Feder, Inc. v. Truesdell, 130 Ohio St. 530, 200 N.E. 762 (1936).

■ The scope of questions permitted to be asked on voir dire examination is generally a matter addressed to the sound discretion of the court. Socony Mobile Oil Co. v. Taylor, 388 F.2d 586 (5th Cir. 1967); Langley v. Turner's Express, Inc., 375 F.2d 296 (4th Cir. 1967); Kiernan v. Van Schaik, 347 F.2d 775 (3rd Cir. 1965).

■ We find no abuse of discretion in the present case.

## Contributory Negligence

It is next contended that the court erred in submitting the issue of contributory negligence to the jury for the reason that there was no evidence to support it. Bush v. Harvey Transfer Co., 146 Ohio St. 657, 67 N.E.2d 851 (1946).

In our opinion, there was supporting evidence.

■ At the time of the accident Eisenhauer was walking through the terminal yard. He was struck by the tractor which was backing up in a curved line, and he was pinned between the two left rear tandem wheels. There was some question whether the tractor had started to move forward. It was noon and traffic was heavy. Eisenhauer was walking between parked cars some of which were backing up in order to leave the area. He was an experienced truck driver and was aware of the inherent dangers of the terminal yard. Whether he conducted himself as a reasonable man would have under the same or similar circumstances was a question of fact for the jury to determine. The issue of contributory negligence was pleaded by the defendants. Appellant never objected to appellee's closing arguments in regard to contributory negligence, nor did she object to the court's instruction on the issue. The District Court did not err in submitting the issue to the jury.

## The Agency Issue

In the District Court, the defendants moved for summary judgment on the ground that Burger was the agent and servant of Norwalk rather than of P and P, and therefore plaintiff's claim was limited to benefits provided by the Ohio Workmen's Compensation statutes which barred suit against a fellow servant. The tractor had been leased by P and P to Norwalk under a lease which required P and P to furnish the driver, carry bob-tail insurance and maintain the equipment in good repair. The District Judge denied the motion on the ground that at the time of the accident Burger was performing duties for P and P rather than for Norwalk. Wilcox v. Transamerica Freight Lines, Inc., 371 F.2d 403 (6th Cir. 1967), cert. denied, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992.

Appellant contends that, in view of this adjudication, the court should not

have permitted the introduction of evidence at the trial relating to agency and should not have interrogated Oscar Poplin on this subject.

■ No objection was made by plaintiff to the interrogation of Poplin by the court or to much of the evidence relating to agency. In any event, we do not see how it could be prejudicial to plaintiff because the court ruled as a matter of law that Burger was the agent of P and P and did not submit the issue of agency to the jury. Furthermore, the jury found by its verdict that Burger was not negligent.

### Misconduct of Counsel

Appellant's final contention is that there was continuous reference made during the trial to appellee's size in order to elicit sympathy from the jury as to appellee's ability to respond in damages. It is argued that questioning and comments by appellee's attorney were designed to indicate to the jury that P and P Transport, Inc. was a small and impoverished concern owned by an individual trucker and his family. The comments which are alleged to be prejudicial were made during opening and closing argument and during presentation of part of appellee's evidence.

■ Evidence as to the poverty or wealth of a party to an action is inadmissible in a negligence action. Hudock v. Youngstown Municipal Ry. Co., 164 Ohio St. 493, 132 N.E.2d 108 (1956); Book v. Erskine & Sons, Inc., 154 Ohio St. 391, 96 N.E.2d 289 (1951).[1]

■ The opening statement of counsel for appellee which is asserted to have prejudicial effect is the following:

"The big trucking companies have their own employees, but it is also common practice * * *

MR. HUFFER: I will object to the question of agency.

MR. JACOBS: I'm not talking about that I'm just giving the background of who these people are.

THE COURT: Proceed.

MR. JACOBS: They commonly lease additional equipment and the people who might own additional equipment are commonly called brokers. Usually as it is in the case of Mr. Poplin, there is a truck driver who has been driving for years and he finally wants to make a few extra pennies, so he buys a truck and he immediately leases it to the trucking company.

Then if he repairs it and keeps the tires up and he gets a fellow that is careful to drive it, he can make a little bit extra by leasing that truck to the company, and the evidence will show that Mr. Poplin, after driving for many years as a truck driver, began to do that, and he accumulated several truck tractors. He didn't own the trailers, he would lease them to various trucking companies, and then to help out in this, he rented a small garage. Actually, it is an old welding shop, but it is out in Holidaysburg, Pennsylvania, and that is where it is now. He lives in a house trailer, with his wife, right next to this old welding shop and he has about ten of these tractors. Most of them, over the years, have been leased to Norwalk Truck Lines." Record, pp. 17–19.

Although the statement may have collaterally indicated that P and P was not a large trucking corporation with substantial assets, it was permissible as background material.

■ During the trial, Mr. Poplin, President of P and P, who with his wife and son owned all its shares of stock, testified on direct examination as to the

---

1. The syllabus of the Court in *Book* stated: "In the trial of a negligence action statements by counsel in argument to the jury, unsupported by evidence and relating to the poverty of one of the parties or the wealth of the other, and deliberate and persistent appeals to the sympathy of the jury, either directly or indirectly, are improper, as tending to induce either excessive or inadequate verdicts as a result of such appeal to the passion or prejudice of the jury."

number of tractors which the company owned. He also testified that he started out initially as a truck driver and later went into the business of leasing tractors and trailers. No objection was made to any of this testimony. He further testified that the place of business of the company was in a small shop. Appellant objected on the grounds of relevancy. The District Court overruled the objection. The testimony was relevant in order to present a foundation for showing that P and P maintained and serviced the tractors and kept them in good working condition; that it chose its drivers with great care; that the equipment, e. g., the mirrors, were in excellent condition at the time of the accident.

■ A more serious question is presented by the comments of appellee's counsel during his argument to the jury relative to P and P's financial situation. He said:

" * * * I think there is every inclination ordinarily by a jury to be curious about the things that are not in evidence, be curious about the financial responsibility of the defendant, about their families, about many things that are not in evidence.

MR. HUFFER: I am going to object, I am sorry to have to, but I don't believe that is a proper consideration.

THE COURT: What did you address it to specifically?

MR. JACOBS: Discussing the financial situation, the absence of evidence of financial situation of the defendants. I hadn't finished. I said if they were curious, they should bar things from their minds that are outside the evidence.

THE COURT: What was your reference with respect to financial condition?

MR. JACOBS: Of the parties * * did I say defendants?

THE COURT: Any reference to the financial responsibility of the defendants is to be stricken and disregarded by the jury. The jury shall draw no inferences of matters that have no bearing on this litigation.

MR. JACOBS: I very much agree with his Honor. There are many things that have no bearing whatsoever on your deliberations, and it would be disastrous sometimes to get into and make a guess that is mistaken." Record, pp. 433–434.

This argument was improper. The Court ordered the argument stricken and instructed the jury to disregard it and to draw no inferences on matters that have no bearing on the litigation. The response of appellant's counsel to the ruling of the Court did not ameliorate the situation.

In Golamb v. Layton, 154 Ohio St. 305, 95 N.E.2d 681 (1950), plaintiff's counsel during closing argument made reference to the financial responsibility of the defendant. The trial court sustained defendant's objection and cautioned the jury to disregard the remarks. The jury returned a verdict for the plaintiff. On appeal, the Supreme Court of Ohio affirmed on the ground that the trial judge was in a better position to determine whether he should have interfered because of the improper remarks and order a mistrial, and the statements of counsel were not so vicious and reprehensible as to call for reversal. In our case, the plaintiff did not move for a mistrial.

The trial of the case consumed four days. The statements by counsel for the appellees were not vicious. The District Court promptly ordered the argument stricken and gave a cautionary instruction to the jury. We cannot say in this case that the argument was so prejudicial as to require us to grant a new trial.

In view of our disposition of the case, it is not necessary for us to pass upon the propriety of the ruling by the District Court overruling defendant's motion for summary judgment.

Affirmed.