RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANNA MADAY,

> *Plaintiff-Appellant,*

No. 05-2637

*v.*

PUBLIC LIBRARIES OF SAGINAW,

> *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 04-10192—David M. Lawson, District Judge.

Argued: March 13, 2007

Decided and Filed: March 28, 2007

Before: MARTIN and CLAY, Circuit Judges; POLSTER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Russell C. Babcock, THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Ernest R. Bazzana, PLUNKETT & COONEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Russell C. Babcock, Victor J. Mastromarco, Jr., THE MASTROMARCO FIRM, Saginaw, Michigan, for Appellant. Ernest R. Bazzana, PLUNKETT & COONEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Anna Maday appeals from a jury verdict in favor of Defendant Public Libraries of Saginaw, pointing to three trial errors allegedly committed by the district court. For the reasons outlined below, we affirm.

I

Maday had been employed since 1977 by the Saginaw Public Library (hereinafter "the Library"), where she managed the genealogy and history departments. In 2001, the Library hired a new Director, Marcy Warner, and a new Assistant Director, Jim Curtis. Curtis was Maday's

---

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

immediate supervisor.  In December 2001, Maday requested and was granted family medical leave through February 2002 to care for her husband, who was having hip surgery.  During her leave, Maday developed heart problems and was forced to undergo triple-bypass surgery.  Her leave was accordingly extended until April 2002, at which point she returned to work until November, when she again requested and was granted family medical leave to care for her husband, who was having a follow-up hip procedure.

When Maday returned from this second leave in December 2002, she received a poor evaluation from Curtis.  The evaluation noted that Maday's performance and attitude had flagged since Warner and Curtis had taken over.  Maday appealed her negative evaluation to Warner and, ultimately, the library board, but both supported Curtis's position.  In February 2003, Maday received another poor evaluation from Curtis, and was suspended for one week when she reacted belligerently to this news.  The day she returned to work, she was told to report to a new supervisor, Jill Coe.  Coe had difficulty working with Maday as well, and on March 28 Maday was suspended again.  She was subsequently terminated on April 11.  Maday was fifty-four years old at the time of her discharge.

On August 2, 2004, Maday filed a complaint in federal district court, alleging age discrimination in violation of federal and state law, as well as violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.  The case was tried to a jury, resulting in a verdict in favor of the Library.

II

### A.  Defense Counsel's Remarks and Expressions During Trial

Maday first argues that the attorney for the Library, Suzanne Bartos, made several inappropriate remarks in the presence of the jury throughout the course of the trial.  Most of these remarks were directly or indirectly disparaging of Victor Mastromarco, Maday's trial counsel.  Mastromarco routinely objected to the remarks, but to no avail.  For example, at the beginning of her opening statement, Bartos remarked to the jury:

> I see it in your eyes, it's not going to be an hour and ten minute [sic] on opening statement, I promise you.  I was having to sit back there, another problem with going second in these trials is I have to sit back and just bite my knuckles.

At the beginning of her closing statement, Bartos said:

> Before I get started on my planned discussion here, I wanted to just say one thing because I've had to sit back there and every time I'm hearing from Mr. Mastromarco it's like nails on a chalkboard.  It's driving me crazy.  Mr. Curtis never said at any point in time that Ms. Maday was disciplined, fired, [or] job changed . . . .  He never testified to that.  I'm not asking to you [sic] take my word, I'm asking you to think back on your memory as to what was asked to him by Mr. Mastromarco . . . .

And at the end of her closing statement, Bartos quipped:

> [Oh, one last thing, because Mr. Mastromarco gets a final say, so to speak, I'm going to have to sit there and] I'm going to do my best to be cordial and respectful and bite my tongue.  But if you hear something that you just, like, gosh that just doesn't

sound right, please, take it upon yourselves to say: Hey, Ms. Bartos would have said this or Ms. Bartos said this not that. Do my job for me because I can't any longer.[1]

In addition to these statements, Maday alleges that Bartos repeatedly made inappropriate facial gestures as a means to communicate with the jury and cast doubt on Maday's case and Mastromarco's abilities as a lawyer. In an attempt to articulate the basis for his objection at trial, Mastromarco argued that Bartos was "attempting to make some type of contact with the jury [via her facial gestures], to show a window to what her mind is thinking about all these things."

Finally, Maday points to a statement made by Bartos accusing Mastromarco of lying during a sidebar conference when the judge was asking Mastromarco and his co-counsel, Manda Aganost, whether or not they had received a particular document. Bartos said, apparently within earshot of the jury, "She's [Aganost's] not going to lie for you," as if to indicate that both Mastromarco and Aganost knew they had received the document, and thus they should not lie about not having received it. Maday views this as "part of an on-going campaign to unfairly and improperly paint Plaintiff's Counsel as a liar to the jury throughout the course of trial."

Mastromarco asked that the district judge poll the jury to see if they had heard or seen any of Bartos's allegedly inappropriate statements or gestures, but the district judge refused, ruling as follows:

> Well, instead of polling the jury the court opted for a different route, and that is to give the jury a special instruction, which I did, that concerned comments of counsel and the reaction of lawyers . . . sometimes in the heat of battle . . . and that they should disregard those comments and decide the case only on the evidence.

The district judge also indicated that any motion for a mistrial on these grounds would be denied even if the jury had heard the remark:

> Hypothetically, if the jury—if one of the jurors would have stated that they heard the comment that Ms. Bartos made and you would have made a motion for a mistrial, my view is that the instruction would have cured the problem and I would have denied the motion for mistrial. In fact, if you would like to make a record and preserve that, I'll entertain your motion for mistrial now.

Maday accepted the district court's invitation, and made a motion for a mistrial, which the district court accordingly denied. We review the district court's denial of a motion for a mistrial for abuse of discretion. *Wilson v. Morgan*, 477 F.3d 326, 341 (6th Cir. 2007) (citing *Grossheim v. Freightliner Corp.*, 974 F.2d 745, 752 (6th Cir. 1992)).

Maday cites to only one case, *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980), in support of her position that Bartos's comments and gestures somehow unfairly prejudiced the outcome of her lawsuit. In *Kiewit*, the city of Cleveland sought to recover from a corporation for damages to a dock that the corporation had been leasing from the City and using to load and unload goods. *Id*. at 750. Throughout the trial, the attorney for the City made persistent references, over the objection of the trial court, to the size of the corporation—e.g., "a $75 million corporation in the marine engineering field"—and to the size and scope of its insurance policy. *Id*. at 753-55. The jury ultimately returned a verdict of $350,000 against the corporation. *Id*. at 751. In ruling that the district court should have granted a mistrial, this Court noted that "evidence as to the poverty or wealth of a party to an action is inadmissible in a negligence action." *Id*. at 757

---

[1] The bracketed portion of this statement was not included by the parties in the Joint Appendix (presumably due to a  minor oversight), but it was referenced by them in their briefs and is part of the trial record.

(quoting *Eisenhauer v. Burger*, 431 F.2d 833, 837 (6th Cir. 1970)); *see also Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) ("Appealing to the sympathy of jurors through references to financial disparity is improper." ).

This case, in contrast, appears to involve nothing more than verbal (and perhaps also non-verbal) sparring between trial attorneys, an occurrence not uncommon "in the heat of battle," as the trial judge correctly pointed out. Bartos's actions may have flirted with impropriety, but it is likely that her demeanor and tactics negatively influenced her own client's case as much as they might have Maday's. Bartos certainly made no express references, as did the attorney in *Kiewit*, that directly violated any rules of evidence. And the statement Maday appears to consider particularly egregious—namely, "She's not going to lie for you"—was said between attorneys and the district judge at sidebar, not in front of the jury. To be sure, the jurors may nevertheless have heard what transpired, but the district court provided a curative instruction to the jury: namely, that it must decide the case only on the evidence and should disregard extraneous comments by either of the parties' attorneys.

"Misconduct by an attorney that results in prejudice may serve as a basis for a new trial. The burden of showing prejudice rests with the party seeking the new trial, and district courts have broad discretion in deciding whether to grant a motion for a new trial." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004) (quoting *In re Air Crash Disaster*, 86 F.3d 498, 524 (6th Cir. 1996)). A reviewing court must determine "whether there is a reasonable probability that the verdict of a jury has been influenced by improper conduct." *Kiewit*, 624 F.2d at 756 (internal quotation marks omitted). "[A] court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case . . ., and the verdict itself." *Id.* Although Maday purports to rely on *Kiewit* to bolster her case, the very language of *Kiewit* does just the opposite: it makes clear that the district judge had broad discretion in determining whether attorney Bartos's comments improperly prejudiced the jury against Maday. Under the totality-of-the-circumstances approach outlined in *Kiewit*, there is no basis to find that the district court here abused that discretion. Accordingly, we affirm the district court's decision not to grant a mistrial for attorney misconduct.

## B. Admission of Alleged Hearsay Evidence

Maday next contends that opposing counsel elicited inadmissible hearsay evidence from some of the Library's employees at trial. In particular, Maday points to parts of Marcy Warner's testimony on cross-examination, when she was asked by defense counsel why she had taken disciplinary action against Maday. At one point during her testimony, Warner recounted comments she had heard from several third parties about Maday, involving both Maday's poor interactions with Library patrons and coworkers as well as Maday's volatile reactions to some of the discipline she received. Warner also testified that she heard from people present when Curtis had suspended Maday in February 2003, that Maday had stormed out of the office and threatened to jump off a bridge. Maday's counsel objected to this line of questioning on hearsay grounds, but these objections were overruled by the district judge, who noted that the statements were not being offered for their truth.

"This court reviews a district court's evidentiary rulings for abuse of discretion, and a district court's determination will be reversed only if the abuse of discretion caused more than harmless error." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (internal citations omitted). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overturned." *Id.*

On appeal, Maday again contests the admission of these third-party statements. She also claims that the district court erred in not issuing the jury a limiting instruction as to the statements even though her counsel did not request one. In support of her claim, Maday cites to *United States v. Miller*, 115 F.3d 361 (6th Cir. 1997), and *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996). But *Miller* and *Merriweather* deal with Rule 404(b) "other acts" evidence in the *criminal* context, and whether, in some instances, the district court must "clearly, simply, and correctly instruct the jury as to the specific purpose for which they may consider [this 404(b)] evidence." *Miller*, 115 F.3d at 366 (emphasis and internal quotations omitted) (quoting *Merriweather*, 78 F.3d at 1077). Neither of the cases has anything to do with admission of hearsay evidence and, in any event, the district court was entirely correct that Warner's statements were admissible *nonhearsay*. Once again, therefore, the cases on which Maday relies are unhelpful to her position. As the district court pointed out during a sidebar:

> I don't believe that [is] a sensible objection. Rule 404 prevents character evidence to prove conduct under limited circumstances, Rule 404(b) allows other acts to show things other than character. This evidence is offered for neither of those purposes, it's to show the reason why the employer took the action it did in accordance with its progressive discipline policy which means something had to happen earlier.

Furthermore, although the district judge *could* have offered a limiting instruction as to some of the third-party statements testified to by Warner, he was by no means *required* to do so in the absence of an explicit request by Maday's counsel. *See United States v. Christian*, 786 F.2d 203, 213 (6th Cir. 1986) ("Fed. R. Evid. 105 provides that 'the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.'"). With no request for a limiting instruction from Maday's counsel, we would reverse only if we were to find that the district court's actions constituted plain error, and Maday clearly fails to meet this very high standard. *See Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 721 (6th Cir. 2005) (citing *Chonich v. Wayne County Comty. Coll.*, 973 F.2d 1271, 1275 (6th Cir. 1992); Fed. R. Civ. P. 51(d)(2)).

### C. Admission of Alleged Privileged Information

Maday's final claim of error concerns the admission of records from her meetings with a social worker from Child and Family Services. Some of these records were initially introduced by Maday herself, as proof of the emotional distress damages that she was seeking under Michigan law. The Library sought to have additional records introduced to show Maday's mental state. Upon attorney Mastromarco's objection, the district court agreed to have some of these additional records excluded because they were not particularly probative as to the emotional distress issue, but were potentially highly prejudicial. But the district court overruled the objection as to some of the other additional records, allowing them to be submitted into evidence.

The admitted record to which Maday particularly objects included the following notation by the social worker:

> Claimant is unhappy with her attorney who told her he didn't want to be used as a tool for her revenge. He wanted claimant to settle out of court, but claimant said they had not discussed it before.

When asked by the district court why she wanted this record admitted, defense attorney Bartos stated:

> [I]t's been our contention all along . . . there are things going on in [Maday's] life that are causing her depression other than what happened at work. One of the things is the fact that her attorney is telling her he's not going to be used as a tool for her.

>   She's depressed, it makes reference to her mood, and we're entitled to explore and argue anything that would have impact on her mood.

The district court agreed, noting:

>   I believe the comment relating to the attorney is probative. There may be some damaging inferences that could be drawn, but I don't find that the unfair prejudice is substantially outweighed by the probative value, especially given the fact that reaction to her attorney and her effort to pursue a claim against the library may be an alternate cause of her emotional state as opposed to the events that occurred when she was employed there, or arising out of her termination. The claim is that the plaintiff was terminated on account of her age and that termination gave rise to a state of—an emotional state that is compensable. This document suggests there might be some alternate source of her distress and, consequently, its relevance is manifest, and . . . not unfairly prejudicial.

Maday seems to argue on appeal that some blend of the attorney-client and social-worker-client privileges should have worked to preclude admission of the above record. However, there exists no "heightened" privilege for statements made by a client to a social worker about that client's attorney. To be sure, if Maday were not seeking emotional-distress damages, then her conversations with a social worker about how she was feeling would likely be privileged. *See In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983) (establishing the psychotherapist-patient privilege as a viable one in the Sixth Circuit); *accord United States v. Hayes*, 227 F.3d 578, 581 (6th Cir. 2000) ("A psychotherapist/patient evidentiary privilege has been well-established in the Sixth Circuit for some time."). But when Maday put her emotional state at issue in the case, she waived any such privilege, and the records may come in, subject to what appears to have been reasonable Rule 403 balancing by the district judge. *See Zuniga*, 714 F.2d at 637 (noting that the text of the proposed federal rule for psychotherapist-patient privilege indicates that "[t]here is no privilege . . . as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense . . .").

Once the social-worker records may be admitted, then a question remains as to whether any of the information contained therein should be shielded by the attorney-client privilege. Yet here, Maday was relating the substance of her conversations with a prior attorney to the social worker. This is a clear example of voluntary disclosure of privileged information to a third party and, as such, any attorney-client privilege Maday may have enjoyed as to this conversation was waived. *See, e.g.*, *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997) ("A client can waive the privilege by voluntarily disclosing his attorney's advice to a third party."). In sum, Maday's argument that the social-worker- and attorney-client privileges should be combined is unavailing in a situation where, as here, both privileges have clearly been waived.[2]

---

[2]To the extent that allegedly privileged evidence was relevant to Maday's *state-law* claims, the social-worker- and attorney-client privileges are governed by the law of the state of Michigan. *See* Fed. R. Evid. 501. Maday's claim of privilege, however, fares no better under Michigan law. Michigan law, like federal law, generally protects social worker-client communications from compelled discovery. *See* Mich. Comp. Laws § 333.18513. However, a party waives that privilege when he or she raises a claim seeking to recover damages for emotional distress. *See Hyde v. Univ. of Mich. Regents*, 575 N.W.2d 36, 42 (Mich. Ct. App. 1997). Moreover, a party waives the attorney-client privilege notwithstanding an "[e]rror of judgment where the person knows that privileged information is being released but concludes that the privilege will nevertheless survive." *Leibel v. General Motors Corp.*, 646 N.W.2d 179, 186 (Mich. Ct. App. 2002). Thus, Maday's claim of privilege lacks merit under Michigan law as well as federal law.

III

The district court did not abuse its discretion in ruling on any of the trial matters of which Maday now complains.  She received a fair trial before a jury and lost.  Accordingly, we affirm.