NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0395n.06

Nos. 23-5612/5645

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 25, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| MODERN HOLDINGS, LLC; WANDA BEASLEY; BRENDA CARTER; MELVIN HARRIS; JANET MITCHELL; SELLERS AND SELLERS COMPANY; DONNA SMITH, | ) ) ) ) ) ) | |
| Plaintiffs-Appellants/Cross-Appellees, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| CORNING, INC., | ) ) | |
| Defendant, | ) ) | |
| PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, a Delaware Corporation, | ) ) ) ) | OPINION |
| Defendant-Appellee/Cross-Appellant. | ) ) | |

Before: BUSH, NALBANDIAN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. For years, Philips Electronics North America Corporation operated a plant in a small Kentucky city. After the plant closed, local property owners claimed that it had emitted dust that contaminated their lands with lead. But a jury disagreed. It found that the property owners had not sued within the statute of limitations and that they had failed to prove their nuisance and trespass claims. The district court then denied the owners' motion for a new trial. According to the district court, a reasonable jury could have found their claims untimely, the court's verdict form accurately conveyed the law, the jury adequately deliberated, and Philips had not improperly used its peremptory strikes. On appeal, we conclude that the court reasonably

resolved these four issues. And that holding allows us to avoid the parties' various claims about the district court's rulings on the admissibility of the expert opinions. We affirm.

I

This case concerns a manufacturing plant in Danville, a city in rural Kentucky with fewer than 20,000 residents. In 1952, Corning, Inc., built the plant to make glass. Corning owned and operated the plant over the next three decades. In 1983, Corning sold the facility to Philips. For several more decades, Philips used the plant to make glass for its light-bulb business. Philips ultimately closed the plant in 2011. Corning bought it back two years later.

Corning and Philips both used lead to make some types of glass at the plant. During the manufacturing process, lead particles could seep out in the dust that left the plant's smokestacks. When Corning first opened the facility, it lacked any pollution-control equipment to contain these lead emissions. But it installed an "electrostatic precipitator" to help catch the lead in 1973. Once Philips took over the facility, it relied on the same device. In 2006, it replaced the electrostatic precipitator with a newer model. Philips reused the captured lead dust to make new glass.

In November 2013, two original plaintiffs filed this diversity suit against Corning and Philips. The complaint asserted that the two companies had polluted neighboring properties through the plant's emissions of lead (among other materials). It added that this pollution would likely cause the plant's neighbors to suffer future health problems. As for legal theories, the complaint alleged that Corning and Philips had created a nuisance by unreasonably interfering with neighboring properties. It also alleged that Corning and Philips had committed a trespass by invading their properties with the lead dust. The plaintiffs sought to certify a class of residents that the emissions had affected.

2

This case has proceeded through protracted litigation. After years of discovery, the district court denied the plaintiffs' request to certify a class action. In response, many more plaintiffs joined the suit. When the court consolidated the case with a similar one, the number of plaintiffs grew to over 100. The court later approved the parties' request to follow a "Bellwether case management approach." Order, R.414, PageID 11691. It opted to hold an initial trial for the claims of the seven plaintiffs in this appeal: Modern Holdings, LLC, Sellers and Sellers Company, Wanda Beasley, Janet Mitchell, Donna Smith, Melvin Harris, and Brenda Carter. Because these plaintiffs asserted only claims for damages to their properties, we will call them the "Property Owners."

Two significant events occurred before the bellwether trial began. All plaintiffs settled their claims against Corning. So the district court dismissed that company from the suit. The Property Owners proceeded to trial against Philips alone. Next, each side filed several motions to exclude the other side's expert testimony under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The court granted these *Daubert* motions in part and denied them in part.

The parties took twelve days to conduct the bellwether trial. But the jury took less than two hours to reach a defense verdict. The jury first found that the Property Owners had not filed their claims within the governing statute of limitations. On the merits, the jury next found that the Property Owners had failed to prove that Philips had created a nuisance or trespassed on their properties.

The Property Owners asked the district court to grant a new trial under Federal Rule of Civil Procedure 59. The court denied this motion. *See Mod. Holds., LLC v. Corning, Inc.*, 2023 WL 3827666, at *5 (E.D. Ky. June 2, 2023).

II

The Property Owners now seek a new trial from us. They primarily challenge the district court's rulings on the admissibility of the expert testimony under *Daubert*. In response, Philips partially defends the district court's *Daubert* order but also cross-appeals other aspects of this order. That said, both sides concede that these alleged evidentiary errors mattered only to the jury's *merits* finding that Philips did not commit a trespass or create a nuisance—not to the jury's *statute-of-limitations* finding that the Property Owners sued too late. The errors thus could not have mattered to the jury's final verdict for Philips unless the Property Owners show that some other error undermined the jury's statute-of-limitations conclusion. *See Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998).

On that front, the Property Owners raise four arguments. They say that this statute-of-limitations conclusion contradicted the weight of the evidence. And they say that the district court gave the jury a misleading jury-verdict form, that the jury violated its duty to deliberate, and that Philips engaged in racial discrimination in its peremptory challenges. We disagree with these arguments. We thus need not address the parties' *Daubert* claims because any *Daubert* errors would have been harmless. *See id.* We will start with the Property Owners' weight-of-the-evidence argument and then turn to their remaining three arguments.

A. Weight-of-the-Evidence Claim

The Property Owners argue that the district court should have granted them a new trial under Federal Rule of Civil Procedure 59 because the jury's statute-of-limitations verdict conflicts with the weight of the trial evidence. Rule 59 allows district courts to grant new trials today "for any reason" that courts have historically "granted" them "in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). And a trial judge could traditionally grant a new trial if the judge

found the verdict "against the weight of the evidence." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 433 (1996) (citation omitted); *see Felton v. Spiro*, 78 F. 576, 582–83 (6th Cir. 1897) (Taft, J.). Yet, given the winning party's right to a jury trial under the Seventh Amendment, we have described a grant of a new trial on weight-of-the-evidence grounds as a "rare" remedy. *Armisted v. State Farm Mut. Auto. Ins.*, 675 F.3d 989, 995 (6th Cir. 2012). District courts should deny requests for new trials on these grounds whenever the jury rendered a reasonable verdict— even if the judge would have ruled the other way. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1047 (6th Cir. 1996); *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967).

Our appellate review is more limited still. At one time, legal authorities suggested that the Seventh Amendment barred appellate courts from reviewing a trial court's refusal to grant a new trial on weight-of-the-evidence grounds. *See Gasperini*, 518 U.S. at 434; *cf. id.* at 450–58 (Scalia, J., dissenting). While the Supreme Court has now approved of this appellate practice, it has done so based on our deferential standard of review. *See id.* at 435–36 (majority opinion). Unlike motions for judgment as a matter of law under Rule 50, a district court has discretion about whether to grant a new trial under Rule 59. *See J.C. Wyckoff & Assocs. v. Standard Fire Ins.*, 936 F.2d 1474, 1487 (6th Cir. 1991). So we review the court's denial of a new trial only for an abuse of discretion, asking whether the record leaves us convinced that the district court "committed a clear error of judgment." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000) (citation omitted). Applying this deferential standard of review, we see no clear error of judgment. Before we undertake that review, though, we must set the stage with the governing Kentucky law.

### 1. Kentucky Statute-of-Limitations Law

We have found the Property Owners' weight-of-the-evidence challenge difficult to evaluate because the parties' appellate briefs do not identify the legal principles that apply to this

statute-of-limitations question. Most basically, the briefs do not cite the governing Kentucky statute of limitations. The district court instructed the jury that a five-year statute of limitations applied to the nuisance and trespass claims. The court appears to have relied on Kentucky Revised Statutes § 413.120. This section establishes a five-year limitations period for a "trespass" action starting from when the "cause of action accrued[.]" *Id.* § 413.120(4). Kentucky courts appear to interpret the statute to cover nuisance claims too. *See Hubbard v. Prestress Servs. Indus., LLC*, 2020 WL 6375187, at *4 (Ky. Ct. App. Oct. 30, 2020) (citing *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 757 (Ky. 1965)). Given that both parties seemingly agree that this limitations period governs, we will apply it here. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021). The Property Owners sued on November 27, 2013. The statute of limitations thus barred their claims if the claims "accrued" before November 27, 2008.

The briefs also fail to identify the law that governs when these nuisance and trespass claims accrued and triggered this limitations period. The district court's order denying the Property Owners' motion suggested that "federal law"—not state law—determined when the state claims accrued. *Mod. Holds.*, 2023 WL 3827666, at *2. But the court relied on a decision suggesting that the same accrual rules applied in that case under either federal law or state law (so this difference did not matter). *Martello v. Santana*, 874 F. Supp. 2d 658, 673 (E.D. Ky. 2012), *aff'd*, 703 F.3d 309, 314–15 (6th Cir. 2013). And *Martello*, in turn, relied on a circuit decision that considered the accrual rule only for *federal* claims. *See Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (per curiam). Yet our caselaw leaves no doubt that state law, not federal law, determines accrual questions when, as here, the plaintiffs pursue state-law claims. *See Cahio v. Drexel Chem. Co.*, 2022 WL 1698386, at *3 (6th Cir. May 27, 2022); *see, e.g.*, *Wolfe v. Perry*,

6

412 F.3d 707, 715 (6th Cir. 2005) (Michigan law); *Gilmore v. Davis*, 185 F. App'x 476, 480–83 (6th Cir. 2006) (Tennessee law); *Imes v. Touma*, 784 F.2d 756, 758 (6th Cir. 1986) (Kentucky law); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464–65 (6th Cir. 2013) (Ohio law).

We thus should consider when these claims accrued under Kentucky law. Courts typically choose between two rules to identify the date when a statute of limitations begins to run: the "occurrence" rule and the "discovery" rule. *See Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam); *Wal-Mart Real Est. Bus. Tr. v. Hopkins Cnty. Coal, LLC*, 2020 WL 7418992, at *4 (Ky. Ct. App. Dec. 18, 2020). Under the "occurrence" rule, courts start the limitations period on the first day that the plaintiff has a complete cause of action and can sue on the claim in court. *See Reguli*, 109 F.4th at 879. Under the "discovery" rule, courts push back the start date to when the plaintiff knew or should have known certain facts about the claim. *See id.* The district court's decision here reveals some uncertainty about which of these rules applies. The court inconsistently invoked *both* rules. Its initial reliance on federal law led it to suggest that we should apply the discovery rule. *Mod. Holds.*, 2023 WL 3827666, at *2. To rebut one of the Property Owners' specific arguments, though, it later switched to the occurrence rule. *See id.* at *2 n.2.

Our own review of Kentucky law suggests that the Kentucky Supreme Court presumptively applies the occurrence rule and saves the discovery rule for cases involving "medical malpractice or latent injuries or illnesses." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010); *see Wal-Mart*, 2020 WL 7418992, at *4. This framework might suggest that the proper rule here depends on whether the Property Owners alleged latent injuries. In that respect, we have refused to apply the discovery rule to a Kentucky-law trespass claim alleging water contamination. *See Newberry v. Serv. Experts Heating & Air Conditioning, LLC*, 806 F. App'x 348, 358 (6th Cir. 2020). We instead held that the claim accrued on the date that "blackish brown materials"

appeared in the plaintiffs' water, even if they did not know the seriousness of the contamination at that time. *Id.* That said, the Kentucky Supreme Court issued an unpublished (and apparently nonbinding) decision applying the discovery rule to other water-contamination claims. *See Cantrell v. Ashland Oil, Inc.*, 2010 WL 1006391, at *10 (Ky. Mar. 18, 2010); *cf. Hubbard*, 2020 WL 6375187, at *7. Even applying the discovery rule, however, the Kentucky Supreme Court held that the statute of limitations started to run when the plaintiffs learned that the defendant had caused a potential water-contamination problem—even if they did not know the exact "harmful materials" that were in the water. *See Cantrell*, 2010 WL 1006391, at *10.

Given the lack of briefing on these legal issues, the "party presentation" principle leaves us hesitant to conclusively decide the governing law on our own. *Sineneng-Smith*, 590 U.S. at 375. We thus will apply the following legal principles for this appeal. To begin, the jury instructions allow us to assume that the discovery rule applies because Philips does not challenge that rule in this appeal. *See Reguli*, 109 F.4th at 880. The unchallenged instructions described the key question as whether each plaintiff "knew, or by the exercise of reasonable care should have known," before November 27, 2008, that the plaintiff's "property may have been contaminated with lead dust particles emanating from the Facility." Instructions, R.695, PageID 28624. That said, *Cantrell* seemingly offers the best evidence as to how the Kentucky Supreme Court would apply this discovery rule to the facts of this case. Under *Cantrell*'s version of the discovery rule, the Property Owners did not need to know that the dust contained lead. They just needed to know generally of the potential pollution problem. *See* 2010 WL 1006391, at *10.

One last point. When choosing the applicable statute-of-limitations rules, Kentucky courts distinguish between permanent and temporary nuisances and continuing and isolated trespasses. *See Lynn Mining*, 394 S.W.2d at 757–60; *Hubbard*, 2020 WL 6375187, at *4–7; *see also Huffman*

*v. United States*, 82 F.3d 703, 705 (6th Cir. 1996). For example, if a defendant operated a plant in an "improper" manner but could have fixed its pollution problem at "reasonable expense," a nuisance qualifies as temporary and a plaintiff can recover for five years of harms dating back from the date of the suit. *Lynn Mining*, 394 S.W.2d at 759 (emphasis omitted). But the Property Owners did not identify this law, so we need not consider the nature of their nuisance and trespass claims. *See Sineneng-Smith*, 590 U.S. at 375–76.

## 2. Application of these Legal Principles

This view of the law makes this case straightforward. While the Property Owners testified that they did not subjectively know about the lead on their properties until experts took soil samples during this litigation, the law as set forth in *Cantrell* did not require that detailed level of knowledge. *See* 2010 WL 1006391, at *10. Rather, the statute of limitations began when the Property Owners knew (or should have known) that dust particles from the plant were landing on their properties—even if they did not know of "the presence" of lead. *Id.* And many Property Owners conceded that they had long recognized that the plant was expelling black dust onto neighboring properties. The jury also could find that the other Property Owners reasonably should have known of this fact. We will address the Property Owners in turn.

*Melvin Harris and Brenda Carter*. Harris testified that he saw "dust" coming out of the plant's smokestacks while growing up in Danville. Harris Tr., R.764, PageID 31761. When he played outside in the snow as a child, the snow "had black dirt all over it" because of these emissions. *Id.* His mother would prohibit him from making ice cream out of the snow because it was not "healthy." *Id.*, PageID 31761–62. As a result, he assumed that there was something "wrong" with the plant's emissions. *Id.*, PageID 31768–69. Carter told a nearly identical story. As a child, she recalled seeing "dust particles" from the plant in her snow-covered yard. Carter

Tr., R.764, PageID 31796. And her parents likewise told her that she could not make "snow cream" because of the dangers from this dust. *Id.* The district court did not abuse its discretion by concluding that this testimony allowed the jury to find that Harris and Carter knew that dust from the plant was falling on local properties long before 2008. *See Barnes*, 201 F.3d at 820.

*Wanda Beasley, Janet Mitchell, and Donna Smith*. Three other Property Owners worked at the plant. Beasley began working there in 1986. She knew that Philips used lead in its glass production, and she wore protective gear when cleaning up the lead dust. She also "always" saw smoke coming from the plant. Beasley Tr., R.761, PageID 30983–84. Similarly, Mitchell worked at the plant from 1983 until 2011. During her work, she conceded that she saw dust "going out the window." Mitchell Tr., R.763, PageID 31535. And while Smith did not testify, the parties stipulated that her testimony would have been "virtually identical" to Mitchell's. Stipulation, R.683, PageID 28578. The district court again did not abuse its discretion by concluding that this work-related testimony allowed the jury to find that these individuals knew the plant was emitting potentially harmful dust onto neighboring properties. *See Barnes*, 201 F.3d at 820.

*Modern Holdings and Sellers and Sellers*. The claims of Modern Holdings and Sellers and Sellers perhaps presented the closest calls. Robert Allen testified on behalf of Modern, which owned nearby property in Danville. He had lived in Danville for decades. But he "never paid any attention" to dust from the plant landing on his property. Allen Tr., R.764, PageID 31735. Kristin Schneider testified on behalf of Sellers, which owned industrial property "right next" to the plant. Schneider Tr., R.764, PageID 31678–79. She grew up in Danville and inherited this business from her father. Her father spent substantial time at the Sellers property and sometimes walked across to the Philips property. For example, he often took Schneider's brother on "treasure hunt[s]" looking for pieces of glass on that property. *Id.*, PageID 31685. At one point, Philips also asked

Schneider's father to install "groundwater monitoring wells" on the Sellers property to monitor Philips's emissions. *Id.*, PageID 31690. Especially when considered against the other testimony about the ubiquitous nature of the dust, this evidence would allow a reasonable jury to find that agents of Modern and Sellers "should have" known of it. *Cantrell*, 2010 WL 1006391, at *10 (citation omitted).

In response, the Property Owners highlight the testimony of two experts who opined about how the plant emissions had affected local property values. Based on the media attention from this lawsuit, these experts picked August 2015 as "the date of knowledge" in the general "community" in Danville. Wilson Tr., R.766, PageID 32207. But this testimony does not help the Property Owners for two reasons. For one thing, our conclusion rests on specific evidence tied to each Property Owner—not on any general theory about when the "*entire* community" learned of the emissions. Appellants' First Br. 38 (emphasis added). For another thing, the limitations period starts to run when a plaintiff *should have* known of the contamination—not just when the plaintiff did *in fact* know of it. *See Cantrell*, 2010 WL 1006391, at *10.

## B. Remaining Claims

Apart from their weight-of-the-evidence challenge, the Property Owners seek a new trial because three other errors allegedly tainted the statute-of-limitations verdict. They are mistaken.

*Verdict Form*. The Property Owners first argue that the verdict form contained "inaccuracies" that led the jury astray. Appellants' First Br. 44. The parties disagree about the standard of review that applies to this claim. The Property Owners concede that they did not timely object to the verdict form below but suggest that we should review this forfeited claim for plain error. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1012 (6th Cir. 2022); Fed. R. Civ. P. 51(d)(2). Philips responds that the Property Owners consented to the verdict form and thus

waived this argument. If so, this waiver would altogether bar our review of this claim. *See Bannister*, 49 F.4th at 1011. We need not resolve this debate. Even if we accept the Property Owners' view, they have not met the "very high" plain-error standard. *Maday v. Pub. Librs. of Saginaw*, 480 F.3d 815, 820 (6th Cir. 2007); *see Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 449 (6th Cir. 2011).

The Property Owners first complain that the verdict form did not instruct the jury that Philips bore the burden of proof on its statute-of-limitations defense. The form asked the jurors to decide whether they "*believe* by a preponderance of the evidence that" the Property Owners knew or should have known of the potential contamination before November 27, 2008. Form, R.696, PageID 28634 (emphasis added). The form's questions about the nuisance and trespass claims, by contrast, asked if the Property Owners had "*proven*" these claims "by a preponderance of the evidence[.]" *Id.*, PageID 28634–35 (emphasis added). Unlike the statute-of-limitations question, then, these questions confirmed that the Property Owners bore this burden.

This argument wrongly considers the verdict form in isolation. We treat verdict forms as part of the jury instructions. *See Coggins v. KLLM, Inc.*, 146 F. App'x 9, 11–12 (6th Cir. 2005); *Sorenson v. Robert B. Miller & Assocs., Inc.*, 1996 WL 515351, at *3 (6th Cir. Sept. 10, 1996); *see also Moody v. United States*, 958 F.3d 485, 491 (6th Cir. 2020). We thus must consider the form and instructions *together*. *See Armisted*, 675 F.3d at 997. And the jury instructions left no doubt that "Philips must prove by a preponderance of the evidence" that the Property Owners did not file their claims in time. Instructions, R.695, PageID 28624. We also must presume that the jury followed these instructions. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 574 (6th Cir. 2019). The district court thus did not commit plain error in the way that the court

12

conveyed Philips's burden to prove its statute-of-limitations defense. *See Bannister*, 49 F.4th at 1012.

The Property Owners next point to a typographical error in the verdict form. The form told the jury to "PROCEED TO QUESTION 2" (a question about the merits) if the jury found that a Property Owner's claim was *untimely*. Form, R.696, PageID 28634. Conversely, it told the jury to "PROCEED TO THE NEXT VERDICT FORM" (involving another Property Owner) if they found it *timely*. *Id.* Yet the form should have conveyed the opposite: to proceed to the merits if the claims were timely and ignore them if the claims were untimely. The Property Owners speculate that the jury might have rejected their claims *on the merits* based solely on its statute-of-limitations finding because the court had instructed that the statute of limitations represented a complete defense. But we need not consider this prejudice theory because we uphold the judgment based on the statute-of-limitations verdict alone. The Property Owners do not argue that this error could have wrongly prejudiced that independent verdict. *See Coggins*, 146 F. App'x at 12.

*Duty to Deliberate*. The Property Owners next suggest that the jury violated its "duty to deliberate." The Supreme Court has held that courts may instruct jurors that they must discuss the evidence with each other and listen to other points of view during their deliberations. *See Allen v. United States*, 164 U.S. 492, 501–02 (1896); *see also Bhat v. Univ. of Cincinnati*, 23 F. App'x 280, 288–89 (6th Cir. 2001) (per curiam); *United States v. Baker*, 262 F.3d 124, 130 (2d Cir. 2001). The district court here thus told the jurors that they had a "duty" "to consult with one another and to deliberate" with the goal of reaching a unanimous verdict. Instructions, R.695, PageID 28632.

The Property Owners argue that the jurors violated this duty in two ways. First, they complain about how fast the jurors reached their verdict. Although the trial took twelve days, the jury found for Philips in about an hour and a half. Yet the district court did not abuse its discretion

in refusing to grant a new trial on this ground. *See Barnes*, 201 F.3d at 820. As a legal matter, the Property Owners do not cite a single decision holding that the general duty to deliberate requires the jurors to deliberate for a minimum period. *Cf. United States v. Anderson*, 561 F.2d 1301, 1303 (9th Cir. 1977) (per curiam); *Wall v. United States*, 384 F.2d 758, 762 (10th Cir. 1967). As a factual matter, the statute-of-limitations verdict (the verdict on which we rely) raised a straightforward question: When should each Property Owner reasonably have known about the possible contamination? This question largely turned on the Property Owners' own testimony—which took up a small fraction of the trial. And it was not the type of question that would require jurors to contemplate for hours if they did not view the issue as close.

Second, the Property Owners complain about sleeping jurors. Their motion for a new trial included affidavits from a lawyer and paralegal who saw several jurors repeatedly dozing off during the trial. But the district court again did not abuse its discretion by rejecting this ground for a new trial. *See Barnes*, 201 F.3d at 820. Even in criminal cases, district courts have "considerable discretion" in how they deal with this issue because they have witnessed the trial and have a better sense for how the misconduct affected the verdict. *United States v. Embry*, 644 F. App'x 565, 572 (6th Cir. 2016). And here, the district court reasonably held that the Property Owners should have raised this issue during the trial so that it could remedy the problem while it was happening. The Property Owners should not have taken a wait-and-see approach by flagging the issue only after the verdict did not go their way. *Cf. Cummings v. Dep't of Corr.*, 757 F.3d 1228, 1235 (11th Cir. 2014).

*Peremptory Strikes*. The Property Owners also claim that Philips unconstitutionally used its peremptory challenges to strike two African American jurors. They correctly note that the Fifth Amendment bars private attorneys from engaging in racial discrimination when using these strikes.

14

*See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991). But the Property Owners did not flag this issue during the voir dire process and instead saved it for their new-trial motion. And the district court did not abuse its discretion by rejecting this argument on the ground that the Property Owners raised it too late. *See United States v. Reid*, 764 F.3d 528, 533 (6th Cir. 2014). Indeed, the record leaves the basic facts unclear. *Cf. United States v. Ramamoorthy*, 949 F.3d 955, 962–63 (6th Cir. 2020). For example, we do not even know if Philips struck the two jurors. As the district court explained, its random draw of the broader pool of jurors might not have selected them to sit on the jury after the parties had exhausted their strikes.

\* \* \*

The Property Owners lastly assert that the "cumulative error" doctrine justifies a new trial because all the alleged errors—when considered collectively—prejudiced them. *See Beck v. Haik*, 377 F.3d 624, 644–45 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc). But our conclusions have rendered this cumulative-error doctrine beside the point. The doctrine applies only if a court identifies errors to "cumulate." *See United States v. Sypher*, 684 F.3d 622, 628–29 (6th Cir. 2012). And other than the single (harmless) typographical error on the verdict form, the district court committed no mistakes.

We affirm.