NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0571n.06
Filed: July 7, 2005

No. 04-1244

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JILL BEAVER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| RGIS INVENTORY SPECIALISTS, INC., | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: GUY, DAUGHTREY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**.   Defendant-appellee RGIS Inventory

Specialists, Inc. ("RGIS") terminated plaintiff-appellant Jill Beaver's employment for failure to

return to work in a timely manner following a vacation.  Beaver contacted RGIS one day prior to

her expected return to inform her supervisor that she was unable to return to work as scheduled

because she was ill and a doctor had advised her not to fly or return to work "for a few days."

Beaver brought this action alleging that the termination of her employment violated the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*  The district court granted RGIS's motion

for summary judgment.[1]  The  court also ruled that, even if Beaver had been suffering from a

---

[1]Briefs of both parties state that the district court granted RGIS's motion for summary judgment
because Beaver was not suffering from a serious health condition, and this is consistent with the

1

"serious health condition," she did not provide RGIS with sufficient notice to trigger FMLA protection.

For the following reasons, we affirm the district court's grant of summary judgment in favor of RGIS.

## I.

RGIS provides inventory-counting services to retail stores such as K-Mart, Wal-Mart, and Home Depot. Beaver was employed by RGIS for fifteen years. Beaver began an approved vacation on March 22, 2002, and was due back at work on April 3, 2002. While on vacation, Beaver became ill and contacted her supervisor, Joseph Kowalewski, on April 2 to inform him that she "didn't feel good" and that she "needed a couple of days to get better, a few days." Beaver faxed a doctor's note to Kowalewski stating that she should not fly or return to work "for a few days." The note did not include the diagnostic information; nor did Beaver inform Kowalewski of her diagnoses. She merely described her condition as "not feel[ing] good." Beaver testified in her deposition that she was diagnosed with acute sinusitis, bronchitis, and an ear infection, was prescribed antibiotics, and ordered to postpone her flight home due to danger of damage to her ear drum. Beaver's patient treatment record from April 2 appears to state that her final diagnosis was sinusitis and diarrhea.

court's brief oral ruling. However, the order included in the joint appendix states only that the motion is granted and does not provide any reasoning. While the proper disposition of this case is so patently obvious that the lack of a reasoned opinion does not hinder our review, typically it is helpful to the parties and the appellate court for the district court to provide a detailed explanation of the basis for disposition. *See Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 617 (6th Cir. 2001) ("This reviewing court, and more importantly, the parties, are much better served when, as is the custom in this circuit, the district court prepares a written opinion explaining its ruling and the reasoning, factual and legal, in support, especially when the ruling disposes of the case in a final judgment.").

The diagnoses of acute sinusitis, acute bronchitis, and acute otitis media (middle ear infection) are listed on a note from a doctor dated April 10.

When Beaver attempted to change her flight, she was told that there were no available flights from her location in Oregon until April 8, 2002. Beaver called Kowalewski to inform him of the flight complication, but was not truthful about her actual location, instead telling him that she was in New Orleans, Louisiana. Kowalewski checked flight availability from New Orleans and challenged Beaver about her location. She admitted that she had not been honest about her location because she was worried that she had violated company policy by visiting another RGIS employee in Oregon.[2] At this point Kowalewski informed Beaver that he could not approve a return to work on April 8 and was referring the matter to the personnel department.

Pamela Rigel, the personnel director for RGIS, informed Beaver that she was not approved to return a week late and that if she wanted to keep her job she needed to make arrangements for an earlier flight. Beaver purchased a new airline ticket for $1800.00 and flew back on Sunday night, April 7. Beaver reported to work on Monday morning, April 8. RGIS personnel department manager Susan Kingman interviewed Beaver upon her return to RGIS. Beaver stated that she did not feel well on the day of her return but admits that she would have worked that day had she been allowed to do so.[3] Beaver was discharged following the interview due to her failure to return from vacation. Beaver's co-worker, Sarah Harek, who was traveling with her, was also discharged for

---

[2]According to appellee's brief, Beaver's visit to another company employee did not violate company rules.

[3]Beaver's brief states that she "was not physically able to work starting on Tuesday, April 9, 2002, the day following her forced return."

failing to return as originally scheduled. Harek was not sick and did not have a medical excuse for her late return.

RGIS claims that it had no knowledge of Beaver's ongoing struggle with a variety of illnesses until the commencement of the litigation. Beaver testified in her deposition that she had not recovered from the illnesses two months after her return, had continued going to the doctor, was continually on medication throughout that time, and was not physically able to work from April 2, 2002, until June 2002. Beaver did not begin a serious job search until March 2003, almost a year after her termination from RGIS, because of her continuing health problems.

Beaver brought this suit alleging that the termination of her employment with RGIS violated the FMLA, 29 U.S.C. §§ 2601 *et seq.* The district court granted RGIS's motion for summary judgment.

II.

A district court's grant of summary judgment is reviewed *de novo*. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Id.* Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Beaver has failed to produce evidence that she was suffering from a serious medical condition at the time of her termination, and this failure is fatal to her case. The FMLA mandates that employers of fifty or more employees allow employees up to twelve weeks of leave within a twelve-month period if the employee suffers from a "serious health condition that makes the

4

employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "Serious health condition" is defined under the FMLA as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care . . . or . . . continuing treatment by a health care provider." 29 C.F.R. § 825.114(a). Continuing treatment by a health care provider includes a "period of incapacity . . . of more than three consecutive calendar days . . . that also involves . . . [t]reatment two or more times by a health care provider . . . or . . . treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." *Id.* The legislative history of the FMLA makes it clear that routine, commonplace illnesses of short duration are not covered by the statute.[4]

Beaver testified that she became ill while on vacation and "was placed on antibiotics with acute sinusitis, bronchitis, and ear infection and was ordered not to fly to return to work by her doctor as it may pop her eardrum." However, Beaver's patient treatment record dated April 2, 2002, does not mention an ear infection or bronchitis. The writing under the final diagnosis heading is unclear but appears to list sinusitis and diarrhea. There is a doctor's note, also dated April 2, 2002, advising Beaver not to fly or return to work "for a few days." The diagnoses of acute otitis, acute sinusitis, and acute bronchitis are included in a return to work or school note from a physician in

---

[4]Specifically, the Senate Report states:

> The term "serious health condition" is not intended to cover short-term conditions for which treatment and recovery are very brief. It is expected that such conditions will fall within even the most modest sick leave policies. Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days and surgical procedures which typically do not involve hospitalization and require only a brief recovery period.

S. Rep. No. 103-3, at 30 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3.

Sterling Heights, Michigan, dated April 10, 2002. There is thus a question whether, at the time Beaver's employment was terminated, she had been diagnosed with sinusitis, bronchitis, and an ear ache as she claims.

Assuming, however, that Beaver was suffering from sinusitis, bronchitis, and an ear infection at the time of her termination, those illnesses are all routine, short-term illnesses not covered by the FMLA. The doctor's note that Beaver would be incapacitated for only a "few days" supports this conclusion. Other federal courts have held that bronchitis, sinusitis, and ear infections do not qualify as serious health conditions. *See Beal v. Rubbermaid Commercial Prods. Inc.*, 972 F. Supp. 1216, 1225 (S.D. Iowa 1997) (holding that an employee's episode of bronchitis was not a serious health condition triggering protection under the FMLA); *Hott v. VDO Yazaki Corp.*, 922 F. Supp. 1114, 1128 (W.D. Va. 1996) (stating that sinobronchitis is not a serious health condition and granting summary judgment to the employer); *Brannon v. OshKosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (holding that employee's gastroenteritis and upper respiratory infection were not serious health conditions even though the employee went to the doctor and was prescribed medication because there was no proof that the employee was "incapacitated" for more than three calendar days). The only case that is helpful to Beaver is *Caldwell v. Holland of Tex., Inc.*, 208 F.3d 671, 674 (8th Cir. 2000), which held that an employee presented sufficient evidence to raise a question of fact as to whether her son's ear infection incapacitated him for more than three days and whether her son then received subsequent treatment for his condition. *Caldwell* is easily distinguishable, however, because Beaver presented no evidence of incapacity other than a doctor's note advising her not to fly for a "few days." Beaver was not entitled to FMLA protection because she was not suffering from a "serious medical condition" at the time of her termination.

Even if Beaver was entitled to FMLA protection, she did not give RGIS adequate notice of her need for FMLA leave. Employees are required to provide employers with thirty days notice when the necessity for FMLA leave is foreseeable and "such notice as is practicable" when the need for FMLA leave is not foreseeable. 29 U.S.C. § 2612(e)(1). Beaver never requested FMLA leave; however, as she points out in her brief, "an employee need not expressly state that FMLA leave is being sought 'or even mention the FMLA . . .' 29 C.F.R. § [825.302(c)]. It is sufficient that the employee makes the employer aware that leave is needed for an FMLA purpose." The relevant inquiry is "whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). Beaver's phone conversations with Kowalewski and Rigel did not provide RGIS with enough information to conclude that she needed FMLA leave. She used very general terms when describing her health such as she "didn't feel good," was "sick," and "needed a couple of days to get better, a few days." Likewise, the note Beaver provided did not provide sufficient notice because it stated only that Beaver would "need to put off returning home (& to work) for a few days." When Beaver returned to work on Monday, April 8, she did not indicate that she could not work due to illness. The only reference to her health in the April 8 interview with Kingman is Beaver's response that she felt a "little bit" better than she did when she was in Oregon when Kingman asked her if she was feeling better. In sum, RGIS had no reason to question Beaver's fitness for work upon her return from Oregon and therefore was not given any notice of FMLA implications.

Beaver's breach of contract claim is also without merit. Beaver uses the RGIS Policy and Procedure Manual to argue that Beaver was "provided a contract right that enured to the benefit of

7

both employer and employee that her personal sick days . . . would be required to be used as part of her right to FMLA in the first instance." RGIS argues that the introductory page to the manual clearly states that "the contents and information contained in this handbook are provided for information only; this is not a contract and does not give rise to enforceable rights or obligations." RGIS also points out that Beaver's complaint "identifies by name only a single cause of action, 'Violations of the Family and Medical Leave Act of 1993.'" Beaver's contractual rights argument is not within the scope of her complaint and, in any event, cannot succeed because the manual does not create contractual rights.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.