Michele **WILKINSON, et al., Plaintiffs,**

v.

**GREATER DAYTON REGIONAL TRANSIT AUTHORITY, et al., Defendants.**

No. 3:11cv00247.

United States District Court, S.D. Ohio, Western Division at Dayton.

Jan. 6, 2014.

Claire W. Bushorn, Clement Tsao, Jennie Gayle Arnold, Cook & Logothetis, LLC, David Marvin Cook, Cincinnati, OH, Tiffany Roxane Reeves, William W. Leathem, Jacobs, Burns, Orlove & Hernandez, Chicago, IL, for Plaintiffs.

Daniel Jay Guttman, David A. Whitcomb, Rodger L. Eckelberry, Matthew Roberts, Scott J. Bent, Columbus, OH, for Defendants.

**ORDER**

SHARON L. OVINGTON, United States Chief Magistrate Judge.

I. *Introduction*

Plaintiffs allege that their employer, Defendant Greater Dayton Regional Transit Authority (Defendant or GDRTA), interfered with their rights to take some or all of the 12 weeks of annual leave due them under the Family and Medical Leave Act of 1990 (FMLA). *See* 29 U.S.C. § 2612(a)(1)(D). Plaintiffs also claim that Defendant retaliated against them in violation of the FMLA for seeking such leave. In addition to their own FMLA claims, Plaintiffs seek class certification on behalf of similarly situated current or former employees of Defendant. (Doc. # s 79, 95).

The parties have encountered discovery problems on issues related, in part, to Plaintiffs' Motion For Class Certification. They have set forth their current discovery disputes in their respective Pre–Hearing Memoranda (Doc. # s 110, 111) and during the in-court hearing held on November 25, 2013.

Although the parties have not filed formal discovery Motions, their pre-hearing briefs and oral arguments seek relief consistent with the Court's authority to issue protective orders or orders compelling production of discovery under Fed.R.Civ.P. 26(c)(1)-(2) and 37(a). Because of this, the Court will proceed without requiring the parties to file formal discovery motions. It is also worth noting that the parties' counsel have presented well-written and cogent pre-hearing briefs, and the clarity of counsels' oral arguments likewise crystallize their present discovery disputes.

II. *Background*

A. *Plaintiffs' Claims and Fed.R.Civ.P. 26(b)*

In their Second Amended Complaint (the Complaint), Plaintiffs ground their individual and class FMLA claims on 29 U.S.C. § 2615(a). (Doc. # 79, PageID at 1369–83). Section 2615(a) prohibits employers from interfering with, restraining, denying, or retaliating against, employees who exercise or seek to exercise their FMLA rights. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir.2006).

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir.2007); *see also Craig–Wood v. Time Warner N.Y.*

*Cable LLC*, 2012 WL 1288753, at *2 (S.D.Ohio Apr. 16, 2012) (Kemp, M.J.). "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir.1998). "Generally, [Rule] 26(b) enables parties to discover any unprivileged evidence or information relevant to their claim." *Surles*, 474 F.3d at 305 (citing Fed.R.Civ.P. 26(b)(1)). Yet discovery may be limited "where its 'burden or expense ... outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Id.* (citing Fed.R.Civ.P. 26(b)(2)(C)(iii)). "In determining the proper scope of discovery, a district court balances a party's 'right to discovery with the need to prevent "fishing expeditions."'" *TCYK, LLC v. Does 1–47*, 2:13–CV–539, 2013 WL 4805022 (S.D.Ohio Sept. 9, 2013) (King, M.J.) (quoting, in part, *Conti v. Am. Axle & Mfg., Inc.*, 326 Fed.Appx 900, 907 (6th Cir.2009), quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir.1998)).

## B. *The Parties' Present Disputes*

The parties' discovery disputes arise in five separate areas touching on (1) Plaintiffs' serious health conditions; (2) the identities of the putative class members; (3) Plaintiffs' alleged damages; (4) Defendant's contracts or business arrangements with medical evaluators or doctors related to employees' FMLA issues; and (5) certain documents Defendant has withheld and identified in its privilege log.

## III. *Discussion*

### A. *Documents Related to Plaintiffs' Serious Health Conditions*

Defendant seeks an Order compelling Plaintiffs to produce information and documents about their serious health conditions. Defendant argues that Plaintiffs' responses were inadequate as to Defendant's Interrogatory No. 1 and Document Requests Nos. 2 through 4.

Defendant's Document Request No. 2, for example, asks Plaintiffs to produce:

Any communication or other documents that relate to any medical or psychiatric treatment or any counseling you received from January 2006 to the present, including but not limited to copies of records from any physician, psychiatrist, psychologist, counselor, or healthcare provider who examined or treated you, or with whom you consulted, concerning any alleged serious health condition for which you sought FMLA leave.

(Doc. # 110, Exhibit 1A, PageID at 2024).

■ Plaintiffs contend that their health records are not at issue and, therefore, not discoverable under Rule 26(b). They reason that the claims in their Complaint focus on Defendant's unlawful FMLA policies but do not hinge on whether they were improperly denied leave for FMLA-qualifying health conditions. Plaintiffs emphasize that their claims "challenge [Defendant's] Uniform Policies, claiming those policies interfere with their ability to exercise their FMLA rights. (*See* R [Doc. # ] 79—Second Amended Complaint *generally* ). But no Plaintiff has placed her medical condition at issue." (Doc. # 110, PageID at 1999). Plaintiffs are incorrect because they overlook or minimize certain factual allegations and FMLA-interference claims they raise in their Complaint.

The Complaint first describes the nature of Plaintiffs' claims (and those of the proposed class and subclasses) in a manner that alleges wrongful denials of FMLA leave by Defendant. For example, paragraph 3(a) of the Complaint alleges that Defendant violated the FMLA and its Regulations by wrongfully and willfully charging "Plaintiffs and similarly situated GDRTA employees with violations such as absenteeism and/or misuse of medical leave provided by the FMLA, which resulted in discipline, suspension and/or termination of employment resulting in lost pay and benefits and/or materially adverse employment actions[.]" (Doc. # 79, PageID at 1366). The plain meaning of these allegations places at issue whether or not Defendant wrongfully denied its employees' FMLA leave requests, in contrast to Plaintiffs' present contentions. Although Plaintiffs further allege that Defen-

dant engaged in this and other wrongful conduct due to its "policies, patterns and practices . . ." (Doc. # 79, PageID at 1365), such allegations do not eliminate the wrongful denial claims the Complaint raises, as in paragraph 3(a), *supra*, p. 265.

In addition, the Complaint as presently written claims wrongful denials of FMLA leave as to each named Plaintiff under the FMLA. *See* Doc. # 79, PageID at 1369–80. For example, Plaintiff Stauter alleges that he completed an FMLA leave application and notified Defendant about his need to take FMLA leave in July 2010 due to chronic *obstructive pulmonary disease*. Defendant allegedly denied Stauter's FMLA leave request and failed to provide him with the required paperwork on July 6, 2009. And, "[o]n July 9, 2010, GDRTA terminated Stauter for exceeding the number of absences allowed under GDRTA's absenteeism policy." (Doc. # 79, PageID at 1376). These allegations reveal that Plaintiff Stauter grounds his FMLA claims on Defendant's wrongful denial of FMLA leave in July 2009 and on the resulting wrongful and retaliatory termination of his employment. *See id.*, PageID at 1375–76. The other named Plaintiffs raise similar allegations and wrongful denial of FMLA leave (though not all allege wrongful termination). In this manner, the Complaint as presently written asserts that Defendant wrongfully denied Plaintiffs leave they were due under the FMLA.

Plaintiffs are likewise incorrect in their contention that "no Plaintiff has placed her[/his] medical condition at issue." (Doc. # 110, PageID at 1999). Plaintiff Stauter has by asserting that his chronic obstructive pulmonary disease qualifies as an FMLA-qualifying "serious health condition." [1] (Doc. # 79, PageID at 1375–76). These and the other Plaintiffs' FMLA-interference claims rest on the fundamental allegation that each Plaintiff suffered from a "serious health condition" that qualified him or her for FMLA leave. *See* Doc. # 79, PageID at 1369–80; *see also Edgar*, 443 F.3d at 506–07; *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 243–44 (6th

Cir.2004). This opens the door for Defendant to discover information and documents related to the specific serious health condition(s) that led each of them to seek FMLA leave. And, for this reason, Defendants' discovery requests for Plaintiffs' health records seek information and documents that are relevant and discoverable under Fed.R.Civ.P. 26(b)(1).

The conclusion that the Complaint, as presently written, asserts wrongful denials of FMLA leave is further supported by the remedies Plaintiffs seek. This is so even though Plaintiffs' counsel pointed out during oral argument that Plaintiffs seek only injunctive relief requiring Defendant to stop the wrongful conduct identified in their Complaint along with mere incidental damages. Counsel's limitations, however, are not consistent with Plaintiffs' Complaint in which they seek to "make whole any adversely affected employees for any time lost as a result of being denied FMLA leave." (Doc. # 79, PageID at 1383). If Plaintiffs prove they are entitled to this remedy, their damages will likely be significant and more than incidental, especially as to an employee who was terminated in violation of their FMLA rights. Plaintiffs' counsel is correct that the Complaint certainly seeks injunctive relief. But as it is presently written, the Complaint exceeds this type of relief by raising factual allegations and claims that might result in significant monetary relief to one or more Plaintiffs.

\*     \*     \*

Plaintiffs argue that their FMLA claims can be resolved by examining the medical certifications each submitted in light of the information known to Defendant when it evaluated her certifications. Under this theory, if a medical certification was valid in light of the information it contained and other related information Defendant knew at the time, then Defendant interfered with the employee's FMLA rights by wrongfully requiring her to jump through additional legally

---

[1]. "A 'serious health condition' is defined as 'an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.' 29 U.S.C. § 2611(11)." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

unjustified procedural hoops to establish FMLA eligibility.

Plaintiffs misstep here by overlooking that the two situations—applying for FMLA leave versus filing this FMLA case—are distinct. While the FMLA and its Regulations circumscribed, in various ways, Defendant's efforts to verify Plaintiffs' asserted need for FMLA leave, *see, e.g.,* 29 C.F.R. § 825.308(a),[2] Defendant is not as limited when defending against Plaintiffs' FMLA-interference claims in the present case. Again, Defendant's discovery requests for Plaintiffs' health records seek information relevant under Rule 26(b)(1) to the issue of whether any of them suffered from a serious health condition. This issue stems from the essential elements of Plaintiffs' FMLA-interference claims. *See Srouder v. Dana Light Axle Mfg.,* 725 F.3d 608, 613 (6th Cir.2013) (stating elements); *see also Edgar,* 443 F.3d at 506–07; *Hoge,* 384 F.3d at 243–44. As a result, although the FMLA limits the steps employers may take to verify FMLA eligibility, the employer is not so limited in defending against FMLA-interference claims in the employees' subsequent FMLA civil actions. *See., e.g., Newman v. Memphis Light Gas & Water,* CIV. 07–2597–D/P, 2009 WL 33313 (W.D.Tenn. Jan. 6, 2009) (Pham, M.J.) (finding FMLA plaintiff's medical records discoverable). "While 'the medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider,' the employer may overcome this presumption by showing that 'the certification is invalid or inauthentic.'" *Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 578 (6th Cir.2007) (quoting, in part, *Harcourt v. Cincinnati Bell Tel. Co.,* 383 F.Supp.2d 944, 955–56 (S.D.Ohio 2005) (citing 29 C.F.R. § 825.307(a))). This is cogently explained in *Moody v. Honda of America, Mfg, Inc.,* 2006 WL 1785464 (S.D.Ohio, June 26, 2006) (Kemp, M.J.):

> [I]t is often the case ... that an employer's litigation position is not that the condition from which the employee suffered is not a qualifying condition under the FMLA, but whether the particular absences taken stem from that medical condition, from some other condition which was not "serious," or from no medical condition at all.

2006 WL 1785464, at *5. Similarly, in the instant case Defendant is entitled to question in future stages of this case whether the particular work absences at issue actually stemmed from the FMLA-qualifying "serious health conditions" asserted by Plaintiffs. This defense tactic will be proper, of course, only if evidence supports it as to one or more of Plaintiffs. But the possibility of this defense, along with Plaintiffs' burden to prove he or she was under a "serious health condition," makes the supporting evidence—Plaintiffs' health records—relevant and discoverable under Rule 26(b)(1). *See id.; cf. Seeger v. Cincinnati Bell Tel. Co., LLC,* 681 F.3d 274, 284 (6th Cir.2012) ("'Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave.'" (citations omitted)).

Support for Defendants' effort to discover information is also found in *Weimer v. Honda of America Mfg., Inc.,* which recognized, "'nothing in the FMLA prohibits an employer from investigating allegations of dishonesty or from terminating an employer who violates company policies governing dishonesty. The FMLA does not shield an employee from termination simply because the alleged misconduct concerns use of FMLA leave.'" *Weimer,* 2:06–CV–844, 2008 WL 1775522, at *3 (S.D.Ohio Apr. 17, 2008) (King, M.J.) (quoting *Kitts v. General Tel. North, Inc.,* 2005 WL 2277438, at *11 (S.D.Ohio 2005) (Holschuh, D.J.)). In the present case, as in *Weimer,* Defendant's requests for information and documents related to Plaintiffs' health conditions seek information discoverable under Rule 26(b)(1) to verify whether any Plaintiff engaged in dishonesty as to the seriousness of their health conditions. *See id.*

\* \* \*

Plaintiffs also rely on two Orders in the same case from the U.S. District Court in the

---

**2.** This Regulation states, in part, "An employer may request recertification no more often than every 30 days and only in connection with an absence by the employee, unless paragraphs (b) or (c) of this section apply." 29 C.F.R. § 825.308(a) (eff. 1/16/09–3/7/13).

Northern District of Illinois: *Smith v. University of Chicago*, 2003 WL 22757754 (N.D.Ill. Nov. 20, 2003) (Memorandum and Opinion Order); and *Smith v. University of Chicago Hospitals, et al.*, unpublished 02–C–221 (N.D.Ill., Oct. 24, 2002) (Minute Order) (available at Doc. #110, Exh. 6, PageID at 2167). The district court in *Smith* did not permit the employer to discover the plaintiff's medical records finding:

> [A]n employer that chooses not to utilize the second and third opinion procedures for contesting an employee's entitlement to FMLA leave for a serious health condition may not later seek discovery of an employee's medical records to challenge the employee's entitlement to the leave in a civil action.

*Smith*, 2003 WL 22757754, at *9. Plaintiffs argue that *Smith* is closely analogous to the instant case and that they—like the plaintiff in *Smith*—have not put their health conditions at issue.

In the present case, the Complaint alleges that Defendant wrongfully required Plaintiffs Wilkinson, Adyelott, and Egler to obtain second and third medical opinions to support their FMLA leave requests. Consequently, applying the *Smith* rule, Defendant remains entitled to discover their health records. *See id.*

In addition, *Smith* is not closely analogous to the present case because the employer in *Smith* certified the plaintiff's FMLA leave request. In the present case, each Plaintiff argues that Defendant wrongfully failed to certified their FMLA leave requests or, at a minimum, wrongfully failed to certify and count their absences as qualified-FMLA absences. *See Smith*, at *7–*8.

Lastly, the *Smith* rule appears contrary to case law in this Circuit. For example, in *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 580 (6th Cir.2007), the Court explained, "an employer's failure to require a second certification does not preclude the employer from contesting the employee's certification." 503 F.3d at 580. Given this, *Novak* essentially disagrees with the finding in *Smith* that requires an employer to seek a second and third opinion regarding FMLA eligibility in order to later discover the employee's health records during a civil action. Instead, *Novak* permits such discovery, at least implicitly, by allowing an employer to contest medical certification even if it failed to require a second medical certification. *Id.; see Weimer*, 2008 WL 1775522 at *3; *see also Moody*, 2006 WL 1785464 at *5; *cf. Beaver v. RGIS Inventory Specialists, Inc.*, 144 Fed.Appx. 452, 456 (6th Cir.2005) (listing cases where the plaintiff did not suffer a "serious health condition").

\*     \*     \*

■ Plaintiffs Egler, Gray, and Mitchell contend that they have not waived their right to invoke the psychotherapist-patient privilege and, consequently, Defendants are not entitled to discover information or documents related to their mental health counselors. Generally, confidential communications between a patient and his or her psychiatrist, psychologist, or social worker counselor are privileged. *See Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). A plaintiff who places his or her emotional state at issue in a case waives this privilege. *See Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir.2007).

■ Plaintiffs' pre-hearing brief correctly recognizes that the psychotherapist-patient privilege exists. *See Maday v. Pub. Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) (and cases cited therein). Plaintiffs' brief also correctly recognizes that a patient may expressly waive the psychotherapist-patient privilege or may waive it by putting her condition at issue in a lawsuit. *See* Doc. #110, PageID at 1999; *see also Maday*, 480 F.3d at 821. Although Plaintiffs Egler, Gray, and Mitchell acknowledge that they have received mental health counseling, they have not indicated whether they base their FMLA claims on their serious mental health conditions. If they do rely on their entitlement to FMLA leave due to a serious mental health condition, they have placed those conditions at issue and waived the psychotherapist-patient privilege for present discovery purposes. *See Maday*, 480 F.3d at 821 (quoting, parenthetically, *In re Zuniga*, 714 F.2d 632, 637 (6th Cir.1983) ("noting that the text of the proposed federal rule for psychotherapist-patient privilege indicates that

'[t]here is no privilege ... as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense ...' ")). Because Plaintiffs seek a Protective Order based on the psychotherapist-patient privilege, they have the burden of providing sufficient information to show it applies. The Complaint and Plaintiffs' pre-hearing brief are silent on the issue of whether Plaintiffs Egler, Gray, or Mitchell sought FMLA because of a serious mental health condition. Plaintiffs have therefore not presently shown good cause for limiting discovery under the psychotherapist-patient privilege. *See* Fed. R.Civ.P. 26(c)(1).

The Court notes that information or documents concerning Plaintiffs' mental health conditions constitute "health information" subject to the terms of the Court's prior Protective Order. (Doc. # 56).

\*     \*     \*

Turning to the specific discovery requests at issue, Defendant seeks an Order compelling Plaintiffs to respond to Defendant's Interrogatory 2 and Discovery Requests 1–4, and 9. Here, what is discoverable under Rule 26(b)(1) is information or documents about the specific health conditions that led each Plaintiff to seek or take the FMLA leave at issue in the Complaint as well as other health conditions to learn "whether the particular absences taken stem from that medical condition, from some other condition which was not 'serious,' or from no medical condition at all." *Moody*, 2006 WL 1785464 at \*5; *see also Weimer*, 2008 WL 1775522 at \*2–\*3.

As to Defendants' requests for health information or documents going back to January 2006, their requests sweep too broadly if they involve health records or information about Plaintiffs' health conditions unrelated to the FMLA leave requests identified in the Complaint. In addition, what is discoverable under Fed.R.Civ.P. 26(b)(1) is information and documents within the applicable three year statute of limitations (for willful FMLA violations). *See* 29 U.S.C. § 2617(c)(2) (eff. Jan. 28, 2008).

\*     \*     \*

Accordingly, for all the above reasons, Plaintiffs shall respond to Defendant's Interrogatory Number 2 as well as Discovery Requests Numbered 1–4, and 9 concerning Plaintiffs' FMLA requests dating from approximately July 20, 2008, which is 3 years before the date they filed their Complaint. Plaintiffs' request for Protective Order shielding them from providing these responses is denied.

The parties are reminded that a party's "health information" constitutes "protected information" subject to the terms of the Protective Order. (Doc. # 56).

### B. The Identities Of Putative Class/Subclass Members

#### 1.

#### *The Parties' Contentions*

Defendant seeks an Order compelling Plaintiffs to answer its contention Interrogatories Nos. 1 through 7. Defendant also seeks documents responsive to its Requests Nos. 1 through 7. In this manner, Defendant wants to learn the identities and connected information and documents concerning the putative class members. For example, Defendant's Interrogatory No. 2 states:

> Identify all current and former employees of [Defendant] who you contend, within the applicable limitations period, "were terminated disciplined or otherwise suffered adverse employment actions based upon discipline and/or termination under defendant's absenteeism policy where the exercise of rights under the FMLA was interfered with or denied".....

(Doc. # 111, PageID at 2519) (quoting, in part, Plaintiffs' Complaint, ¶ 131(a)).

Plaintiffs contend that they have answered these discovery requests to the extent necessary by identifying documents—*i.e.*, Defendant's own business records—from which Defendant could derive the information it seeks. Plaintiffs also contend that identifying putative class members before any class is certified is unwarranted because their identities are not relevant to class certification.

## 2.

### Discovery and Plaintiffs' Proposed Class and Subclasses

The main class Plaintiffs seek to certify consists "of current and former employees of [Defendant] GDRTA who were 'eligible' within the meaning of 29 U.S.C. § 2611(2)(A), and who applied for, been [sic] denied, disciplined, terminated or otherwise had their rights under the FMLA interfered with or who were retaliated against for the exercise of rights under the FMLA." (Doc. # 95, PageID at 1802). Plaintiffs state that they "may" also seek certification of 6 subclasses each containing employees who have allegedly suffered violations of their FMLA rights in certain ways. For example, Plaintiffs propose the following as subclass 1:

> All current and former employees of GDRTA who were 'eligible' within the meaning of 29 U.S.C. § 2611(2)(A) during the applicable limitations period, whose medical certifications were found insufficient and whose rights under the FMLA were denied and/or restrained.

*Id.*

"Courts universally recognize that some discovery is necessary prior to a determination of class certification." *Phillips v. Philip Morris Companies, Inc.*, 5:10CV1741, 2013 WL 3291516 at *3 (N.D.Ohio June 28, 2013) (citing *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974) ("Maintainability [of a class] may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings provide.")) (other citations omitted). "In managing discovery in cases of this nature, district courts are required to balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *Id.* (citations omitted).

## 3.

### Plaintiffs' Amended Motion for Class Certification

Before considering the parties' discovery arguments, it is helpful to review what Plaintiffs must do, and are attempting to do, in their Amended Motion for Class Certification.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart,* —— U.S. ——, 131 S.Ct. 2541 (2011) (italics in original). Plaintiffs attempt to do so in their Motion for Class Certification by first presenting arguments under each of the well-known Fed.R.Civ.P. 23(a) elements—numerosity, commonality, typicality, and adequate representation—and by then seeking certification under Fed.R.Civ.P. 23(b)(2).[3] They reason that a Rule 23(b)(2) certification is warranted because they primarily seek injunctive relief and any monetary relief is secondary to their effort to halt or significantly modify Defendant's FMLA program and policies. *See* Doc # 95.

Defendant has not yet responded to Plaintiffs' Amended Motion For Class Certification, which is currently stayed pending a new case-management plan. *See* Doc. # 98 (and resulting Notation Order). Defendant contends that it needs to know the identities of the putative class members to oppose class certification.

## 4.

### Analysis

Defendant's discovery requests concerning the putative class members' identities fall within the scope of Rule 26(b)(1). The identities of the putative class members is relevant to test many of the assertions Plaintiffs raise in their Amended Motion for Class Certification and supporting Exhibits. One

---

**3.** Rule 23(b)(2) provides, "A class action may be maintained if Rule 23(a) is satisfied and if ... the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole...."

key Exhibit is Attorney Killeen's Declaration in which he describes the methods he used to conduct his extensive document review and to obtain his statistical results. (Doc. # 95, Exh. D). As to results, Attorney Killeen explains, for example, "Approximately 232 employees were told that their medical certification, returned after July 20, 2009 or pending at that time, was insufficient or incomplete. This reflects 63.39% of the employees who turned in an FMLA certification." *Id.*, PageID at 1836, ¶ 15. He further states, "Approximately 96 employees were required to recertify their condition after July 20, 2008 or had a recertification pending at that time. This reflects 26.23% of the employees who turned in an FMLA medical certification after July 20[,] 2008 or had a certification pending as of that date." *Id.,* ¶ 16.

■ By relying on the information in Attorney Killeen's Declaration to support their Amended Motion For Class Certification, Plaintiffs have placed the identities of putative class and subclass members at issue. This is so because Attorney Killeen did not create the numbers in his Declaration out of thin air; he based them on his count of individual employees who may or may not fit the definition of Plaintiffs' proposed class or subclasses. Relevancy under Rule 26(b)(1) is exposed here because Defendant is entitled to challenge whether or not individuals Attorney Killeen counted fit Plaintiffs' proposed definitions of the class and subclasses they want certified. If Defendant knows who fits and who doesn't fit Plaintiffs' class definitions, its counsel can efficiently determine whether or not it should challenge any of Plaintiffs' arguments under Rule 23(a)(1)-(3)'s requirements of numerosity, commonality, and typicality.

Plaintiffs' argument that Defendant has the information it needs in its records points to the forest of current or former employees rather than to the trees that are the putative class members. Why does this matter? Because Plaintiffs' Amended Motion for Class Certification effectively narrows what is relevant and discoverable to the trees—the individuals fitting their class definitions. This is to be expected since Plaintiffs have the burden to show class certification is warranted

under Rule 23(a) and (b). *In re Whirlpool Corp. Front–Loading Washer Products Liab. Litig.,* 722 F.3d 838, 850–51 (6th Cir.2013). And Plaintiffs' burden under Rule 23 means it is not unfair that they, not Defendant, must do this discovery legwork by identifying what individuals fit into the class and one or more subclasses. Without it, they would be left with dubious grounds for seeking class certification or when attempting to satisfy their burden under Rule 23. *See Whirlpool,* 722 F.3d at 851 ("Ordinarily, ... class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action.").

Plaintiffs have properly stepped forward by culling the numbers and delineating the proposed class and subclasses. Now it is Defendant's turn to respond by focusing on the current and former employees in Plaintiffs' proposed classes rather than by searching its business records for possible class members. To require the latter would not efficiently advance the class-certification proceedings. It would instead waste time and increase the costs of discovery unnecessarily when Plaintiffs have already identified individuals by way of attorney Killeen's methods and results. Once Defendant knows the identities of the putative class members, Defendant's counsel will be able to readily determine whether those individuals are numerous enough or otherwise meet Rule 23(a)'s commonality and typicality requirements. In this manner, the case will proceed fairly and expeditiously.

Plaintiff relies on *Brinkerhoff v. Rockwell International Corp.,* 83 F.R.D. 478 (N.D.Tex. 1979) a Title VII sex discrimination case in which the defendants' effort to learn the identities of putative class members was thwarted. The District Court in *Brinkerhoff* found that the identities were not relevant to the issues of numerosity, commonality, or typicality. *Id.,* 83 F.R.D. at 480–81. As to typicality, the District Court reasoned, "Defendants need to know what the claims are, not who made them, to assess the similarity of those claims and plaintiff's claims." *Id.* at 480.

As a case from the District Court in Texas, *Brinkerhoff* carries no precedential effect in

this Court. It is therefore considered here for its persuasive effect. And persuasive it is not due to the stringent developments in class-certification law, explained most notably in *Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. –––, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011). *Brinkerhoff,* a case decided in 1978, precluded all inquiry into the merits of the putative class members claims by stating, "the merit of the claims of class members is . . . irrelevant at the class certification hearing." 83 F.R.D. at 481. Today, this is a correct statement of law only if limited to the ultimate merits of a class members claims. *Wal–Mart* insists upon a "rigorous analysis" to resolve whether or not Rule 23's requirements have been met. ––– U.S. at –––, 131 S.Ct. at 2551. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.,* ––– U.S. at –––, 131 S.Ct. at 2551–52 (citation and brackets omitted). This case, unlike *Brinkerhoff,* requires some overlap. Plaintiffs must present evidence beyond the allegations of their pleadings to show that the putative class members fit within their proposed class definitions and, in turn, to show the proposed class and subclasses satisfy Rule 23(a)'s requirements of numerosity, commonality, and typicality. Indeed, Plaintiffs are attempting to do so, in part, by relying on attorney Killeen's Declaration. Given the rigorous Rule–23 analysis required at this stage of the case, and in light of Plaintiffs' arguments in their motion for class certification, it is permissible for Defendant to challenge Plaintiffs' motion on the ground that some or many of the class and subclass members do not fit Plaintiffs' class definitions and that the proposed class or subclass fail Rule 23(a)'s requirements. Defendant determine if such opposition is warranted without first learning the identities of Plaintiffs' putative class members. Defendant therefore seeks information relevant or reasonably calculated to lead to relevant information. And, as a result, Defendant may discover the identities of the putative class members.

## C. *Remaining Issues*

Defendant seeks an Order compelling Plaintiffs to produce documents and specifically identify their alleged damages by precise amount in dollars claimed for any damages, and to likewise explain how they calculated their alleged damages. Plaintiffs responded to these discovery requests by indicating that they "don't currently have exact damages amounts or calculations." (Doc. # 111, Exh. G at 2510).

▇ Although Defendant's cases generally support a defendant's entitlement to damages information, none of Defendant's cases are controlling upon this Court and, more significantly, none establishes that Plaintiffs must produce the requested damages information during pre-class certification discovery. *See In re Williams Patent Litigation,* 1987 WL 11982 (D.D.C. May 26, 1987); *Lind v. Canada Dry Corp.,* 283 F.Supp. 861, 862 (D.Minn.1968); *Gordon v. Noel,* 356 N.W.2d 559, 564 (Iowa 1984); *Bolton v. Lear Corp.,* No. 98–2719, 98–3250, 175 F.3d 1019 1999 WL 265173 at *2 (7th Cir.1999); *Knopik v. Amoco Corp.,* 2003 WL 172917 at *3–*4 (D.Minn. Jan. 23, 2003); *Zenith Electronics Corp. v. WH–TV Broad. Corp.,* 395 F.3d 416, 420 (7th Cir.2005). This said, Plaintiffs' remain subject to their duty to supplement their discovery responses under Fed.R.Civ.P. 26(e).

\*　　\*　　\*

Plaintiffs seek an Order compelling Defendant to produce documents related to or referring to its contracts or business arrangements with medical evaluators or doctors concerning FMLA reviews and such matters as medical certifications and second or third physician opinions. Plaintiffs also seek Defendant's communications (letters, notes, emails, etc.) with its medical evaluators, as well as documents to or from doctors or healthcare providers relating to various aspects of FMLA reviews (*e.g.,* certification and recertification). The discovery at issue arise from Plaintiff's Third Request for Production of Documents Nos. 1 through 20. (Doc. # 110, Exh. 5).

Defendant believes that the parties no longer have a discovery dispute about its contracts or business arrangements with doctors or medical evaluators because it already produced its 2006 contract with Kettering Workers' Care Center because it does not currently have such contracts or business arrangements and because it did not have such a contract with a medical evaluator in January 2011.

The problem with Defendant's position is that Jean McEntarfer seemed to indicate otherwise during her October 2011 deposition in a prior FMLA case.[4] McEntarfer testified about GDRTA's use of Kettering Workers' Care and one of its physicians, Dr. Klein, as follows:

Q. You indicated that [GD]RTA no longer uses Kettering Workers' Care or Dr. Klein; is that correct?

A.[5] Yes.

Q. When did RTA discontinue its use of Dr. Klein?

A. We contract with different agencies and the contract ended—I believe it was in August of this year [2011].

(Doc. # 110, Exh. 12, PageID at 2203–04). McEntarfer's statement that Defendant contracts "with different agencies" may broadly refer to Defendant's contracts with agencies unrelated to FMLA review and certifications. However, when read in context (in the few deposition pages provided), it is also reasonable to understand McEntarfer's testimony as referring to Defendant's FMLA-review contracted with agencies other than Kettering Worker's Care. Given this, Plaintiffs are entitled under Rule 26(b)(1) to learn the identities of, and Defendant's contracts with, those agencies or medical evaluators between the time Defendant's contract with Kettering Worker's Care ended and the time Plaintiffs' instituted this case in 2011. The contracts, if any existed, are relevant and discoverable under Rule 26(b)(1) as to the particular policies, procedures, or practices Defendant had in place concerning FMLA-leave requests.

During oral argument, Defendant's counsel explained the tertiary role that medical eval-uators played in Defendant's FMLA process. Counsel stated that Defendant would contact a medical evaluator and simply ask, do you have a spine doctor (for example) to conduct an FMLA review. If the medical evaluator had a spine doctor, then the employee's FMLA file—which Defendant has already produced—will have the spine doctor's name and information about the doctor's FMLA review. Defendant's counsel further explained that if the medical evaluator did not have the type of doctor needed for the FMLA review, then there was no contract with the medical evaluator or a doctor. But, assuming this process occurred as counsel describes, McEntarfer indicated in her deposition that Defendant had different, perhaps additional, contracts. Again, she indicated that Defendant had contracts with different agencies or, in other words, Defendant contracted with more than individual doctors to obtain specific FMLA reviews. As a result, the present record and Rule 26(b)(1) support Plaintiffs' requests for contracts Defendant had with medical evaluators or physicians.

Plaintiffs also wonder about the possibility that Defendant had oral contracts or business arrangements with doctors, healthcare providers, or medical evaluators concerning FMLA reviews. This is a reasonable possibility based on McEntarfer's deposition testimony because she did not state whether Defendant's "contracts with different agencies" were written or oral, at least in the pages of the deposition transcript provided. (Doc. # 110, Exh. 12, PageID at 2203–04). If such oral contracts or business arrangements existed, they would be relevant and discoverable under Rule 26(b)(1) regarding what policies, procedures, or practices Defendant had in place concerning FMLA-leave requests.

But providing meaningful responses to Plaintiffs' discovery requests will not require Defendant to identify each specific oral contract or business arrangement that arguably arose from any *single* FMLA review. Defendant is correct that they have adequately responded to Plaintiffs' discovery requests by referring to the FMLA files it has already

4. *Harrison v. Greater Dayton Regional Transit Authority,* 3:10cv00430 (Rose, D.J.).

5. [by Jean McEntarfer].

produced. The medical evaluators, physicians, or healthcare providers' names will appear there if they conducted the FMLA reviews Plaintiffs are concerned with. It is, moreover, reasonable to limit Plaintiffs' document requests to the written contracts or business arrangements Defendants had with medical evaluators or doctors or healthcare providers to conduct FMLA reviews. In the event such written contracts existed, Plaintiffs will be able to connect the dots between such contracts and the reviews documented in the FMLA files that Defendant has already produced to learn more about Defendant's policies, procedures, or practices. And, placing the burden on Plaintiffs to connect the dots in this manner is fair because they have the burden to prove their FMLA claims, *see Edgar*, 443 F.3d at 507, and because under the present circumstances, Defendant properly relies on the FMLA files they have already produced, *see* Fed.R.Civ.P. 33(d). The same is true as to Plaintiffs' overly broad requests for "[a]ll notes, letters, emails . . ., agreements, and other documents . . ." related or referring to medical evaluators or doctors or healthcare providers with whom Defendant ". . . retained, joint-ventured, or made arrangements . . ." to conduct FMLA reviews. *E.g.,* Doc. #110, Exh. 5, PageID at 2150–51. The FMLA files already produced is a reasonable place for Plaintiffs to look for such documents.

\* \* \*

The parties' remaining dispute over the documents identified in Defendant's privilege log remains at issue pending Defendant's in camera submission, and the Court's review, of the pertinent documents identified in the privilege log.

## IT IS THEREFORE ORDERED THAT:

The parties shall conduct further discovery as set forth herein.